Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS HENDERSON, <br><br> Plaintiff, <br><br> vs. <br><br> UNIVERSAL SECURITY INSTRUMENTS INC., HARVEY B. GROSSBLATT, CARY LUSKIN, RONALD A. SEFF, and IRA F. BORMEL, <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Thomas Henderson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to his, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.        Plaintiff brings this stockholder action against Universal Security Instruments Inc. ("Universal" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"), for breaches of fiduciary duty, violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Infinite Reality, Inc. ("Infinite"), through merger subsidiary D-U Merger Sub, Inc. ("Merger Sub," and together with the Company and Board, the "Defendants") as

a result of an unfair process, and to enjoin an upcoming stockholder vote on two proposed all-stock reverse merger transactions set to be consummated collectively (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 25, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the Merger Agreement, Infinite Reality shareholders acquire the right to convert their Infinite Reality common stock held immediately prior to the Merger into USI common stock. Each share of Infinite Reality common stock will convert into the right to receive 0.437608078 shares of USI common stock.  As a result of the consummation of the Proposed Transaction, all existing stockholders of Universal will see their stock diluted.

3.      Thereafter, on May 16, 2022 USI filed a Registration Statement on Form S-4 (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the dubious nature of the stock issuance at the heart of the Proposed Transaction is laid bare considering the extreme dilutive effect that the Proposed Transaction will have on Plaintiff's Company stock.

5.      Moreover, the Registration Statement reveals the completely insufficient manner in which the Proposed Transaction was entered into by the Board, indicating that no financial advisor was retained, providing no projection information for either the Company nor Infinite Reality, and providing no financial analyses whatsoever conducted by the Board or anyone else on its behalf.

6.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement on May 16, 2022 with the SEC in an effort to secure Plaintiff's vote in favor of the Proposed Transaction.  The Registration Statement is materially deficient,

deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for USI and Infinite, provided by USI and Infinite to the Board or anyone on its behalf; and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions and/or financial analyses, if any, created by the Board or by anyone on its behalf.

7.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages suffered by Plaintiff resulting from the breaches of fiduciary duties and violations of the federal securities laws by Defendants.

## PARTIES

8.     Plaintiff is a citizen of Georgia and, at all times relevant hereto, has been a Universal stockholder.

9.     Defendant Universal, together with its subsidiary, designs, markets, and distributes safety and security products for use in homes and businesses in the United States and internationally. Universal is incorporated in Maryland and has its principal place of business at 11407 Cronhill Drive, Suite A, Owings Mills, MD 21117. Shares of Universal common stock are traded on the New York Stock Exchange under the symbol "UUU."

10.     Defendant Harvey B. Grossblatt ("Grossblatt") has been a Director of the Company at all relevant times. Grossblatt also serves as the Company's Chief Executive Officer ("CEO").

11.     Defendant Cary Luskin ("Luskin") has been a director of the Company at all relevant times.

12.     Defendant Ronald A. Seff ("Seff") has been a director of the Company at all relevant times.

13.     Defendant Ira F. Bormel ("Bormel") has been a director of the Company at all relevant times.

14.     Defendants identified in ¶¶ 10 - 13 are collectively referred to as the "Individual Defendants."

15.     Non-Party Infinite is the social Metaverse technology company born from the dynamic merger of Display Social, the venture-backed, social commerce media platform and app better known as the "social that pays," and Thunder Studios, the fully integrated entertainment services company.

16.     Non-Party Merger Sub is a wholly owned subsidiary of Infinite created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

18.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this

District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

20.     Universal, together with its subsidiary, designs, markets, and distributes safety and security products for use in homes and businesses in the United States and internationally. It offers a line of safety alarms, including units powered by replaceable batteries, sealed batteries, and battery backup alarms; and smoke alarms, which include hearing impaired and heat alarms, as well as carbon monoxide alarms, door chimes, ventilation products, ground fault circuit interrupters, and other electrical devices under the UNIVERSAL and USI Electric trade names. The company provides its products to wholesale distributors; chain, discount, and television retailers; home center stores; catalog and mail order companies; electrical and lighting distributors, and manufactured housing companies; and other distributors. It also sells its products through independent sales organizations and sales representatives, as well as through its own sales catalogs and brochures, and website. The Company was incorporated in 1969 and is headquartered in Owings Mills, Maryland.

21.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the October 28, 2021 press release announcing its Fiscal Year 2021 Q3 financial results, the Company highlighted that for the six months preceding the report, sales increased approximately 6% to $9,940,221 versus $9,398,063 for the same period last year. In addition, the Company reported net income of $122,337, or $0.05 per basic and diluted share.

22.     Speaking on the positive results, CEO Defendant Grossblatt discussed the company's ability to perform and deliver increased sales in light of supply chain issues and global shortages.

23.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Universal.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

24.     Despite this upward trajectory, the Individual Defendants have caused Universal to enter into the Proposed Transaction without providing requisite information to Universal stockholders such as Plaintiff.

***The Flawed Sales Process***

25.     As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to purchase Infinite by any means necessary irrespective of the dilutive effect on Company stockholder such an action would have.

26.     Primarily, the Registration Statement is completely lacking in any relevant financial information related to the Proposed Transaction.

27.     For instance, the Registration Statement does not include any projection information for either the Company or Infinite.

28.     Additionally, the Registration Statement does not include a fairness opinion and/or financial analyses related to the Proposed Transaction created by the Board or by anyone (including the unnamed financial advisor that was engaged by the Company) on the Board's behalf.

29.     Moreover, the Registration Statement indicates that the Company Board engaged an unnamed financial advisor but fails to provide any relevant information whatsoever regarding the terms of this engagement, the identity of this financial advisor, the services performed by this financial advisor, or the compensation given to this financial advisor.

30.     Furthermore, the Registration Statement gives no adequate explanation for why the

Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares.

31.     The Registration Statement also fails to indicate whether an independent committee of independent and disinterested board members was created to run the sales process on behalf of the USI Board.

32.     In addition, the Registration Statement is unclear as to the nature of any non-disclosure agreement entered into between USI and any potentially interested third party, including Infinite, as part of the sales process, and if the terms of any such agreements differed from one another, and in what way.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

34.     On February 25, 2022, Universal and Infinite issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **NORWALK, CT and OWINGS MILLS, MD,** February 25, 2022: Universal Security Instruments, Inc. (NYSEAmerican: UUU) ("USI") and Infinite Reality, Inc. ("Infinite Reality"), the new Metaverse innovation and entertainment company born out of the powerful combination of social ecommerce platform app Display Social and leading entertainment production facility Thunder Studios, announced today they have entered into a definitive merger agreement. Under this agreement, shareholders of Infinite Reality will become the majority owners of USI's outstanding common stock upon the closing of the merger. Subject to approval by shareholders of both Infinite Reality and USI, as well as SEC clearance and stock exchange approval, the proposed merger will result in a publicly traded company operating under the Infinite Reality name.
>
> As part of the transaction, USI today announced that it is evaluating strategic alternatives to maximize the value of its safety and security device operating business.
>
> John Acunto, Chief Executive Officer of Infinite Reality said, "Today is a big day for Infinite Reality's mission of establishing economic fairness for all content creators. Infinite Reality is leading the revolution of the new creator-focused

economy and is building a world in which its users will have access to, and earn money in, the social Metaverse, which includes minting, selling, and trading NFTs, providing creators themselves the ability to directly monetize their own content. This merger is an exciting next step and gives the company broader access to the capital markets, and further supports our commitment to disrupting social media and social commerce through the democratization of the open Metaverse. Infinite Reality has already secured over $50,000,000 in financing, and we are in the process of finalizing terms on further investments that will come into place upon the merger. As we become a publicly traded entity, we look forward to accelerating our platform and growth."

Harvey Grossblatt, Chief Executive Officer of USI, commented, "The USI board's recommendation to merge with Infinite Reality and seek to maximize the value to our shareholders of USI's operating business comes after a thorough review of USI's current operations and strategic alternatives. The decision by our management and board will allow our shareholders to participate in the upside opportunity being offered by Infinite Reality while simultaneously continuing to benefit from the ongoing value of USI's historic business. We believe the combination with Infinite Reality will allow us to merge with an innovative and forward-looking partner focusing on the ubiquitous social media, Metaverse and NFT world, thereby allowing our shareholders the opportunity to realize value in a very active sector in the market. The value to our shareholders from receiving an equity interest in Infinite Reality together with the value we are able to derive from our continuing business should represent a premium to the Company's current trading price, is an ideal way to maximize shareholder value and is in the best interests of our shareholders, employees and other stakeholders."

**Proposed Transaction Detail**

Immediately following the closing of the merger, the Infinite Reality shareholders will hold approximately 97% of USI's outstanding common stock and the shareholders of USI prior to the merger will retain ownership of approximately 3% of USI's outstanding shares. In addition, the value of the business assets of USI and its ongoing business will continue to inure to the benefit of the pre-merger shareholders of USI.

Upon completion of the merger, which is expected to close in the second quarter of 2022, USI will change its name to Infinite Reality, Inc. and the Infinite Reality board of directors and management will lead the merged company, while USI's current management will continue to manage the USI assets and operating business.

**About Infinite Reality, Inc.**

Infinite Reality (iR) is the social Metaverse technology company born from the dynamic merger of Display Social, the venture-backed, social commerce media platform and app better known as the "social that pays," and Thunder Studios, the

fully integrated entertainment services company. Infinite Reality is focused on the mission that creators should be financially rewarded for the quality content they produce. By providing creators, artists, innovators, and companies with the tools they need to help build the Metaverse and be rewarded for their social media interaction, iR empowers anyone with a phone or computer to both capitalize on their social creativity and create their own unique piece of the Metaverse. For more: theinfinitereality.com and displaysocial.com.

**About Universal Security Instruments, Inc.**

USI is a U.S.-based manufacturer and distributor of safety and security devices. Founded in 1969, the Company has a 53-year heritage of developing innovative and easy-to-install products, including smoke, fire and carbon monoxide alarms. For more information on USI, visit our website at www.universalsecurity.com.

**Additional Information about the Proposed Merger and Where to Find It**

In connection with the proposed merger, USI and Infinite Reality intend to file relevant materials with the Securities and Exchange Commission, or the SEC, including a registration statement on Form S-4 that will contain a prospectus and a proxy statement. Investors and security holders of USI and Infinite Reality are urged to read these materials when they become available because they will contain important information about USI, Infinite Reality and the proposed merger. The proxy statement, prospectus and other relevant materials (when they become available), and any other documents filed by USI with the SEC, may be obtained free of charge at the SEC website at www.sec.gov. In addition, investors and security holders may obtain free copies of the documents filed with the SEC by USI by directing a written request to: Universal Security Instruments, c/o Harvey Grossblatt, Chief Executive Officer, 1407 Cronhill Drive, Suite A, Owings Mills, MD 21117. Investors and security holders are urged to read the proxy statement, prospectus and the other relevant materials when they become available before making any voting or investment decision with respect to the proposed merger.

This communication shall not constitute an offer to sell or the solicitation of an offer to sell or the solicitation of an offer to buy any securities, nor shall there be any sale of securities in any jurisdiction in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such jurisdiction. No offering of securities in connection with the proposed merger shall be made except by means of a prospectus meeting the requirements of Section 10 of the Securities Act of 1933, as amended.

***The Materially Misleading and/or Incomplete Registration Statement***

35.     On May 16, 2021, the USI Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to

provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

36.     Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Registration Statement fails to disclose:

a. Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

b. Any Projection information for either the Company or Infinite, whatsoever;

c. Any fairness opinion and/or financial analyses related to the Proposed Transaction created by the Board or by anyone (including the unnamed financial advisor that was engaged by the Company) on the Board's behalf, whatsoever;

d. Specific information regarding the unnamed financial advisor engaged by the Company Board including, but not limited to:

    i. The terms of this engagement;

    ii. The identity of this financial advisor;

    iii. The services performed by this financial advisor;

    iv. The compensation given to this financial advisor;

e. Specific information regarding whether a committee of independent and disinterested Company board members was created to run the process, and if not, the specific reasons why;

f. Whether any confidentiality agreements entered into by the Company with Infinite differed from any other unnamed confidentiality agreement entered into

between the Company and potentially interested third parties if any, and if so, in what way; and

g. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Infinite, would fall away.

*Omissions and/or Material Misrepresentations Concerning USI and Infinite Financial Projections*

37.    The Registration Statement fails to provide material information concerning financial projections for USI and Infinite provided to and relied upon by the financial advisor in its analyses.  The Registration Statement fails to disclose financial projections for the Company, which is materially misleading

38.    The Registration Statement should have, but fails to provide, certain information in the projections for USI and Infinite that were provided to the Board and The financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

39.    Notably, the Registration Statement provides no relevant projection information related to the Company or Infinite at all, thus rendering it impossible for Plaintiff to determine the value of the Proposed Transaction, the Company's standalone value, or whether to vote in favor of the Proposed Transaction.

40.    This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

41.     Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses, if any, Related to the Proposed Transaction*

42.     The Registration statement discusses various duties and actions conducted by an unnamed financial advisor.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

43.     The Registration Statement should contain, but fails to provide the analysis conducted by the financial advisor, by the Board, or by anyone else on behalf of the Board. This information should contain at a minimum:

  a.  The identity of the financial advisor;

  b.  The processes undergone in reaching a conclusion as to the fairness in engaging in the transaction contemplated;

  c.  Full disclosure of the analysis undergone by the financial advisor, including the relevant metrics, inputs, and assumptions used to compute analysis necessary to determine the fairness of the transaction.

44.     The Registration should, but fails to provide, adequate disclosure of the processes necessary to determine whether the proposed transaction was in the best interest of the Company and Common Stockholders.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

45.     Plaintiff repeats all previous allegations as if set forth in full herein.

46.     Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

47.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

48.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

49.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

50.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

51.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

52.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**<u>(Against all Individual Defendants)</u>**

53.     Plaintiff repeats all previous allegations as if set forth in full herein.

54.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

55.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.   The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

56.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Bluerock's business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.   As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

57.     The Individual Defendants acted as controlling persons of Bluerock within the meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company, the Individual Defendants had the power and authority to cause Bluerock to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Bluerock and all of its employees.   As alleged above, Bluerock is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 26, 2022                              **BRODSKY & SMITH**

By: _____
                                                 Evan J. Smith
                                                 240 Mineola Boulevard
                                                 Mineola, NY  11501
                                                 Phone:  (516) 741-4977
                                                 Facsimile (561) 741-0626

                                                 *Counsel for Plaintiff*